UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KEITH DRAKE | CIVIL ACTION |
| VERSUS | NO.  04-3522 c/w<br>05-6657 |
| DANOS AND CUROLE MARINE<br>CONTRACTORS, L.L.C., ET AL. | SECTION  "N"  (4) |

## ORDER AND REASONS

Presently before the Court are: (1) Plaintiff's Motion for Partial Summary Judgment; (2) the Motion for Summary Judgment filed by Defendant Trinity Catering, Inc. ("Trinity"); (3) the Alternative Motion for Partial Summary Judgment filed by Trinity; and (4) Plaintiff's Motion to Show Cause Why Compensation Should Not be Paid.  Having considered the parties' submissions and the applicable law, **IT IS ORDERED** that Trinity's Motion for Summary Judgment (Rec. Doc. No. 98) is **GRANTED**, and that Trinity's Alternative Motion for Partial Summary Judgment (Rec. Doc. No. 101) is **MOOT**.  **IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment  (Rec. Doc. No. 148) and Motion to Show Cause Why Compensation Should Not be Paid (Rec. Doc. No. 162) are **DENIED**.  Accordingly, **IT IS FINALLY ORDERED** that all of Plaintiff's claims against Trinity are dismissed with prejudice and at Plaintiff's cost.

**BACKGROUND**

Plaintiff alleges that he was injured, on or about December 21, 2004, when a vessel on which he was aboard, the M/V DIXIE PATRIOT, allided with a fixed platform. The vessel was operated by Defendant Danos & Curole Marine Contractors, L.L.C., and owned by Defendant Power Marine Investments, L.L.C. The platform was owned by BP Exploration and Production, Inc. Plaintiff was employed by Trinity, which is in the business of providing contract labor to various oilfield companies on land jobs, fixed platforms, and vessels. On December 21, 2004, Plaintiff was serving as the night cook for the M/V DIXIE PATRIOT. He alleges that, at the time of the allision, he was standing on the stove, cleaning the vent hood, and, upon impact, fell to the vessel deck and suffered severe injuries.

**LAW AND ANALYSIS**

**I.     Motions for Summary Judgment**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out

2

that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the

motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

### A.     Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment asks the Court to order that Plaintiff be paid maintenance and cure benefits based on an alleged admission, by Trinity, of Plaintiff's seaman status in a October 12, 2006 "Notice of Controversion of Right to Compensation" document filed in Plaintiff's Department of Labor proceeding under the Longshore Harbor Workers' Compensation Act ("LHWCA"). *See* Plaintiff's Memorandum (Rec. Doc. No. 148) and the Exhibits thereto. Trinity objects to the relief sought by Plaintiff on grounds that the document in question is unauthenticated, is hearsay, and was signed by someone who is unknown to Trinity and is not an employee or authorized spokesperson for it. *See* Affidavit of Wayne Holmes, Exh. 1 to Trinity's Opp. (Rec. Doc. No. 155). Nevertheless, Trinity does concede that the form appears to have been submitted on behalf of its Workers Compensation/LHWCA carrier. *See* Trinity Opp. at 3. It further states, in its opposition to Plaintiff's Motion to Show Cause, that it "has given over handling of Plaintiff's

4

LHWCA claim to its LHWCA insurance carrier, which is specifically authorized by the LHWCA, 33 U.S.C. §§935-36." *See* Trinity Opp. to Plaintiff's Motion to Show Cause (Rec. Doc. No. 164) at 4. Finally, referencing the December 21, 2004 Department of Labor "Employer's First Report of Injury" form that it submitted directly to the Department of Labor, Trinity maintains that it has informed the Department of Labor that it considers Plaintiff to be covered by the LHWCA because it does not consider him to be a seaman under the Jones Act. *See* Trinity Opp. at 8; Exhs. 1 and 1-A.

Considering the parties' submissions for this motion, the Court is not satisfied that it has all of the information before it that would be necessary to render summary judgment in Plaintiff's favor based on an alleged admission in a separate administrative proceeding. Further, as will be explained in the following paragraphs, the Court has determined, based on the evidence presented in this proceeding, that Plaintiff is not a seaman. Notwithstanding this ruling, the Court urges Trinity, if it has not already done so, to promptly confer with its LHWCA carrier regarding Plaintiff's LHWCA claim and confirm that it has all relevant information regarding Plaintiff's employment.

### B. Trinity's Motions for Summary Judgment

Trinity's motion for summary judgment seeks a determination that Plaintiff is not a seaman. It also has submitted an alternative motion for partial summary judgment, which, if summary judgment is denied regarding seaman status, asks the Court to dismiss Plaintiff's claims for penalties and attorney's fees for non-payment of maintenance and cure and for negligence.

The Fifth Circuit's decision in *Becker v. Tidewater, Inc.*, 335 F.3d 376 (5th Cir. 2003) sets forth the legal principles governing a determination of seaman status. There, the Court of Appeals explained:

> To determine if an individual worker is a seaman, and therefore entitled to the protections of the Jones Act, the Supreme Court has established a two-prong test. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." [*Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S. Ct. 2172, 2190 (1995)]. Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id.*
>
> The Supreme Court in *Chandris* admitted that satisfying the first prong of the test is relatively easy: the claimant need only show that he "do[es] the ship's work." *Id. See also In re Endeavor Marine, Inc.*, 234 F.3d 287, 290 (5th Cir. 2000). This threshold requirement is "very broad," encompassing "all who work at sea in the service of a ship." *Chandris*, 515 U.S. at 368, 115 S. Ct. 2172 (internal citations and quotation marks omitted).
>
> \* \* \* \*
>
> Turning to the second prong . . . [t]he requirement of a substantial connection to a vessel is intended "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation." *Id.* As the Supreme Court has noted,
>
>> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of the vessels and the perils attendant thereon. The duration of the worker's connection to a vessel and the nature of the worker's activities taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

*Id.* at 370, 115 S. Ct. 2172 (internal citations and quotation marks omitted). Importantly, this second prong constitutes a "status-based" standard – *i.e.*, "it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel." *Id*. at 364, 115 S. Ct. 2172.

\* \* \* \*

While seaman status is not simply a temporal concept, the amount of time a worker spends aboard a vessel in navigation is helpful in determining if that worker has attained seaman status. *See id.* at 371, 115 S. Ct. 2172. This circuit has quantified the duration of time necessary to allow submission of the issue of seaman status to a jury by using a 30 percent rule of thumb. "[A]s a general rule, [a worker] must show [substantial duration] by demonstrating that 30 percent or more of his time is spent in service of that vessel." *Roberts v. Cardinal Servs. Inc.*, 266 F.3d 368, 375 (5th Cir.2001). The Supreme Court [has] endorsed this thirty-percent rule:

> Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases . . . . And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict.

*Chandris*, 515 U.S. at 371, 115 S. Ct. 2172. FN7 Importantly, the Supreme Court has articulated an exception to temporal guidelines, such as our thirty-percent benchmark. *Id.* at 372, 115 S. Ct. 2172. First, an employee who has worked for years in an employer's shoreside headquarters and who is then reassigned to a ship in a classic seaman's job qualifies for seaman status even if he is injured shortly after reassignment. *Id.* Second, a worker who has been reassigned to a land-based job cannot claim seaman status based on prior service at sea. *Id.* The Court summed up these two exceptions by noting that "[i]f a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to

7

> have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.* Thus, a worker who, over the course of his employment, has worked in the service of a vessel in navigation well under thirty percent of his time may still qualify for seaman status if he has been reassigned to a new position that meets this temporal requirement. *See id.*
>
> \* \* \* \*
>
> FN7. After *Chandris*, this circuit reaffirmed the 30-percent rule. In *Nunez v. B&B Dredging, Inc*., 288 F.3d 271, 277 (5th Cir.2002), it was held that because the plaintiff spent only approximately 10 percent of his work time aboard a vessel in navigation, he did not qualify for seaman status as a matter of law.

*See Becker*, 335 F.3d at 387-89.  Regarding the second prong, an "identifiable group" of vessels is a "finite group of vessels under common ownership or control."  *Harbor Tug and Barge Co., v. Papai*, 520 U.S. 548, 560, 117 S. Ct. 1535, 1541, 1543 (1997).

Here, it is undisputed that Plaintiff satisfies the first prong of the *Chandris* test.  A cook clearly contributes to the function of the vessel or to the accomplishment of its mission.   It is the second prong – whether Plaintiff has a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature – that is in dispute.

The affidavit of Barry Champagne, Trinity's personnel manager, establishes that Trinity did not own the M/V DIXIE PATRIOT, or any of the other vessels on which Plaintiff worked.  *See* Affidavit of Barry Champagne, Exh. 1 to Trinity's Memorandum ("Trinity's Mem.") (Rec. Doc. No. 98), at ¶¶ 6 & 14.  Rather, Trinity is in the business of providing contract labor, including cooks and galley hands, for typically short-term jobs on land, fixed platforms, and vessels. *Id.* at ¶ 3.  The location and the duration of each job is determined by the client's needs. *Id.* at ¶ 7.  According to Champagne, it is rare for a Trinity employee to be permanently assigned to work on a particular vessel or for a particular company.  *Id.* at ¶ 5.  Rather, job orders are assigned to

8

available employees based on how long it has been since an employee's last assignment and his travel distance to the job. *Id.* at ¶ 8.

The parties' evidence establishes that Plaintiff commenced his employment with Trinity in June or July 2004. *Id.* at ¶9; Exh. 1-A to Trinity's Mem.; *see also* Transcript of Keith Drake, Sr. Deposition ("Drake Dep."), Exh. 2 to Plaintiff's Opp. at 78. During the approximately six months of that employment, Plaintiff worked on six different vessels owned by six different companies. *See* Champagne Affid. at ¶ 10. At the time of the allision, Plaintiff was working aboard the M/V DIXIE PATRIOT for the first time and had served eleven days of that assignment. *Id.* at ¶¶ 9-11;  Exh. 1-A to Trinity's Mem. Thus, only 12.94% of his working time with Trinity was aboard the M/V DIXIE PATRIOT. *See* Trinity Mem. at 2. Champagne's affidavit further states that Plaintiff was never permanently assigned to any particular vessel or company, including the M/V DIXIE PATRIOT and its operator, Danos & Curole, and did not work on any vessel with any regularity or continuity. *See* Champagne Affid. at ¶¶ 6 & 13. Finally, Champagne maintains that Plaintiff's next job assignment would not have been determined until he was ready to accept another assignment, and that it would have been very unlikely that he would have been sent back to the M/V DIXIE PATRIOT at that time. *Id.* at 12.

In opposing Trinity's motion for summary judgment, Plaintiff argues only that it was his "understanding that the assignment to the M/V DIXIE PATRIOT was permanent." *See* Plaintiff's Opp. (Rec. Doc. No. 116) at 6. Providing more specificity, Plaintiff's affidavit states: (1) that "it was [his] understanding that [he] was to be permanently assigned to the M/V DIXIE PATRIOT as the day cook; (2) that John Stanford was leaving because the vessel was going in for Coast Guard inspection and two cooks thus would be unnecessary;  and (3) that he was to be John Stanford's

9

replacement and "was going to be the permanent cook for the M/V DIXIE PATRIOT." *See* Affidavit of Keith Drake, Exh. A to Plaintiff's Opp. at unnumbered page 2.

For several reasons, Plaintiff's opposition and supporting affidavit fail to establish that a genuine issue of material fact exists regarding his substantial connection to a vessel or an identifiable group of vessels under common ownership or control.[1]  Most importantly, there is no dispute that, at the time of the allision, Plaintiff served as the night cook and John Stanford served as the day cook.  Even if Plaintiff had anticipated a upcoming change in job status that would have made him the permanent cook for the M/V DIXIE PATRIOT, that change had not yet occurred.

Nor does Plaintiff's affidavit specify the basis of his "understanding" regarding a change in his status with respect to that vessel.  Assuming it was premised on a conversation with Mr. Stanford, Plaintiff makes no effort to establish Mr. Stanford's competency to testify regarding the identity of his successor or the scope and duration of that person's appointment.

Finally, Plaintiff's affidavit contradicts his prior deposition testimony without explaining the contradiction.  When deposed, Plaintiff testified that, while he was told a permanent assignment to the M/V DIXIE PATRIOT was possible, he never was told that he was going to be permanently assigned to that vessel.  *See* Drake Dep. at 147-48.  He further agreed that it was "up in the air whether or not [he] would go back to the DIXIE PATRIOT or to the ARAPAHO . . . or

---

[1] Plaintiff does not disagree with Defendant's calculation of his time spent on vessels other than the M/V DIXIE PATRIOT,  or assert that he had a connection to any one of those vessels that was substantial in terms of both duration and nature.  Nor does he offer any argument that an exception to the rule that multiple vessels to which a plaintiff has a connection must be subject to common ownership or control should apply in this instance.  *See, e.g., Bertrand v. Int'l Mooring & Marine, Inc.,* 700 F.2d 240, 245-48 (5th Cir. 1983);  *see also Roberts v. Cardinal Servs, Inc.,* 266 F.3d 368, 377-78 (5th Cir. 2001) (discussing exception to "general 30 percent substantial connection requirement" set forth in *Bertrand*).

10

to any other vessel" to which the dispatcher might send him, and explained that Trinity employees "[were] not guaranteed to go back to the same job." *Id.* at 149, 151. While an affidavit may supplement, clarify, or amplify prior sworn testimony, it may not contradict the prior testimony without adequately explaining the contradiction. *See Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482-83 (5th Cir. 2002); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996).

Given the foregoing, and construing the parties' submitted evidence in Plaintiff's favor, the Court finds that, at the time of his accident, Plaintiff *possibly* could have been permanently assigned, at some *future* time, to the M/V DIXIE PATRIOT. However, he had not yet been so assigned. Rather, at the time of the allision, he was uncertain whether he would remain with the M/V DIXIE PATRIOT, or be sent, at the conclusion of that particular assignment, to some other vessel. Thus, on the showing made, the Court finds that no genuine issue of material fact exists with respect to whether Plaintiff had a substantial connection to a vessel, or fleet of vessels, as that requirement has been construed by controlling jurisprudence. Accordingly, Trinity is entitled to summary judgment as a matter of law on this issue.

Turning to Trinity's alternative motion for partial summary judgment, Plaintiff's maintenance and cure penalty and attorney's fees claims, as well as his negligence claims, are predicated upon him having seaman status. Because the Court has granted Trinity's motion for summary judgment on seaman status, it is unnecessary for the Court to address Trinity's motion addressing these issues. Accordingly, **IT IS ORDERED** that the motion is rendered **MOOT**.

### C. Plaintiff's Motion to Show Cause Why Compensation Should Not be Paid

Plaintiff's motion to show cause asks the Court to require Trinity to show cause why it should not be ordered to provide him with medical treatment and compensation under either the Jones Act or the LHWCA. The Court's determination that Plaintiff is not a seaman for purposes of the Jones Act precludes an order under that statute. With regard to Plaintiff's LHWCA claim, which is pending before the Department of Labor, Plaintiff has not established that this Court is empowered, at present, to provide any relief relative to that claim. Accordingly, **IT IS ORDERED** that Plaintiff's motion to show cause is **DENIED**. The Court, however, urges Trinity to take whatever steps are necessary for it and/or its carrier to accomplish a prompt and just resolution of Plaintiff's LHWCA claim.

### CONCLUSION

As stated herein, the Court has determined that Trinity shall not be held to have admitted Plaintiff's seaman status. Further, the Court finds that Trinity is entitled to summary judgment on Plaintiff's alleged seaman status; therefore, the Court does not address Trinity's alternative motion for summary judgment regarding Plaintiff's claims for penalties and attorney's fees and for negligence. Finally, the Court declines to order Trinity to provide Plaintiff with medical treatment and compensation under either the Jones Act or the LHWCA.

New Orleans, Louisiana, this  13th  day of March 2007.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE